

**NUMBER 13-06-706-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

ROBERT HOLEMAN TWIST,                                    **Appellant,**

**v.**

McALLEN NATIONAL BANK,
ET AL.,                                    **Appellees.**

---

**On appeal from the 92nd District Court of Hidalgo County, Texas.**

---

# O P I N I O N

### Before Justices Yañez, Garza, and Vela
### Opinion by Justice Yañez

Appellant, Robert Holeman Twist, appeals from the trial court's orders dismissing

his case for want of prosecution and denying his motion to reinstate.[1]  Appellees, McAllen

National Bank, Robert Williams, Jeffrey Fitch,[2] and Grace Neuhaus-Richards (collectively

---

[1] *See* TEX. R. CIV. P. 165a.

[2] Jeffrey Fitch is now deceased.

"the Bank parties") have filed a motion to dismiss the case for lack of jurisdiction. Finding that we lack jurisdiction over the appeal, we grant the motion to dismiss the appeal as to all parties.[3]

## I. Background

This case is one of several filed by Twist arising out of a transfer of money by McAllen National Bank ("the Bank") out of one of Twist's accounts.[4] In trial court cause number C-3690-99-A (the "first lawsuit"), Twist brought suit against the Bank, alleging that it improperly allowed his wife, Brenda Griggs, to transfer money out of his account. Twist agreed to settle that lawsuit for $75,000, but before the trial court entered judgment on the settlement, Twist attempted to revoke his consent. The Bank moved to enforce the settlement agreement. The trial court granted the Bank's motion, resulting in two orders dismissing the lawsuit on January 19, 2001 and April 29, 2002.

On May 24, 2004, Twist filed an appeal from the April 29, 2002 order. This Court dismissed that appeal as untimely on July 7, 2005.[5] Twist contended that the trial court's order dismissing his case was interlocutory and filed numerous motions in the trial court attempting to resurrect the claims, ultimately resulting in a petition for writ of mandamus

---

[3] Appellees Ray Thomas, Veronica Gonzales, and the law firm of Kittleman, Thomas, Ramirez & Gonzales, P.L.L.C., have not moved to dismiss but have addressed the issue of jurisdiction in their appellate brief. Because we hold that we lack jurisdiction over this appeal, and this issue must be addressed even if not raised by the parties, we grant the motion to dismiss as to the entire cause and all appellees. *See Guest v. Dixon*, 153 S.W.3d 466, 467 (Tex. App.–Amarillo 2004), *rev'd on other grounds,* 195 S.W.3d 687 (Tex. 2006).

[4] *See, e.g., Twist v. McAllen Nat'l Bank*, 248 S.W.3d 351, 355 (Tex. App.–Corpus Christi 2007, orig. proceeding).

[5] *See Twist v. McAllen Nat'l Bank*, No. 13-04-613-CV, 2005 WL 1572738, at *1 (Tex. App.–Corpus Christi July 7, 2005, no pet.) (mem. op.) (per curiam).

and a second appeal being filed with this Court.[6]

While Twist's first appeal was pending, on October 8, 2004, he filed suit in trial court cause number C-2281-A (the "second lawsuit") against the Bank parties and Ray Thomas, Veronica Gonzales, and the law firm of Kittleman, Thomas, Ramirez & Gonzales, P.L.L.C., (collectively "Kittleman"). In this second lawsuit, Twist alleged various fraudulent and tortious acts by these parties that occurred before, during, and after the first lawsuit and its settlement.

On November 2, 2004, Kittleman filed a plea in abatement, arguing that Twist's first lawsuit involved the same parties and claims and that an appeal was pending from the judgment in that case. Thus, Kittleman requested the court to abate the second lawsuit "pending disposition of the appeal." On November 15, 2004, the trial court granted the motion. The order stated that the motion for abatement was granted "for all purposes and that the present proceeding is abated pending further order of the Court."

Although Twist's first appeal was dismissed on July 7, 2005, no action was taken in the second lawsuit throughout the end of 2005 and the first half of 2006. On August 1, 2006, the trial court sent notice that it intended to dismiss the second lawsuit for want of prosecution.[7] The court set a hearing on the dismissal for September 19, 2006. At the hearing, Twist argued that there had been no action in the case during the previous two years because of the abatement order. The court, however, dismissed the case for want of prosecution. The court's order stated, incorrectly, that there had been no opposition to

---

[6] *Twist*, 248 S.W.3d at 357-58.

[7] This notice does not appear in the record. However, Twist does not dispute that he received the notice.

the court's motion to dismiss. On October 6, 2006, the Bank parties and Kittleman filed a motion to correct or amend the order dismissing the suit. They argued that the court's order was incorrect in stating that there was no opposition to the motion to dismiss.

Twist then filed three motions to reinstate on October 13, 14, and 17, 2006. In these motions, he alleged that the trial court's order was incorrect because he had opposed the dismissal. Additionally, he argued that the abatement prevented the court from dismissing for want of prosecution. An identical verification signed by Stephen T. Leas, Twist's attorney, was attached to all three of the motions to reinstate. It stated:

> BEFORE ME, the undersigned Notary Public, on this day personally appeared STEPHEN T. LEAS, a person whose identity is known to me. After I administered an oath to him, upon him [sic] oath he said he read the foregoing and attached pleading, and that the facts stated in it are within his personal knowledge and/or belief, as indicated, and are true and correct.

Nowhere, however, do the motions to reinstate indicate which facts are being sworn to based on Leas's personal knowledge as opposed to his beliefs.

On October 19, 2006, the trial court held a hearing on the motion to amend the judgment and on Twist's motions to reinstate. Neither the Bank parties nor Kittleman raised any objection to the motions to reinstate or the verifications. That day, the court issued an amended order of dismissal for want of prosecution, this time correctly noting that Twist had appeared to oppose the dismissal. The order stated that the cause had been abated pending appeal and that the appeal was dismissed on July 7, 2005, after which Twist took no action. The order did not, however, deny the motion to reinstate.

Because an amended order of dismissal was entered, Twist filed yet another motion to reinstate on November 16, 2006. This motion recited, in great detail, the facts of the case from its inception, including all the events leading up to the first and the second

4

lawsuits. Again, this motion to reinstate contained the same verification as the first three motions to reinstate, and nowhere in the motion did Leas indicate which facts he verified based on his personal knowledge as opposed to his beliefs.

The trial court set a hearing on this motion for December 5, 2006. The same day, the Bank parties and Kittleman filed a response to the motion, objecting to the verification as fatally defective. First, they argued that the motion must be verified based on personal knowledge and not on mere information or belief. Second, they argued that Leas was incompetent to verify the motion to reinstate because he was not Twist's attorney of record until approximately October 3, 2006;[8] thus, he did not have personal knowledge of the procedural events prior to that date. Accordingly, the Bank parties and Kittleman argued that, in the absence of a properly verified motion to reinstate, the court was without jurisdiction to reinstate the case because its plenary power expired thirty days after the amended order dismissing the case for want of prosecution, on November 20, 2006.[9]

At the hearing, Leas complained that he received the Bank parties' and Kittleman's objections to his verification immediately before the hearing, and he asked the court to swear him in as a witness. Leas purported to swear to portions of the pleading based on his personal knowledge, but he conceded that most of the events detailed in the motion occurred before he became Twist's attorney. After the hearing, the trial court sustained the Bank parties' and Kittleman's objection to the verification, and it held that Leas was not

---

[8] Twist asserts that the date of Leas's first appearance in the case alleged by the Bank parties and Kittleman is "false and misleading" and points out that Leas appeared at the September 19th hearing. The Bank parties and Kittleman respond that although Leas appeared at the September 19th hearing, he filed a formal notice of appearance in the case on October 3, 2006, and that is the basis for their statement.

[9] *See* TEX. R. CIV. P. 4. November 19, 2006 fell on a Sunday. Thus, under Rule 4, the deadline to file the notice of appeal would not include that Sunday and would instead be Monday, November 20, 2006. *Id.*

competent to verify the pleading and that its plenary power expired in the absence of a properly verified motion. Leas requested findings of fact and conclusions of law on December 7, 2006, and filed a notice of appeal that same day. He filed a notice of past due findings of fact and conclusions of law on December 29, 2006, but none were ever filed by the trial court. This appeal ensued.

## II. Discussion

Twist raises five issues in his appeal, arguing that the trial court: (1) abused its discretion by determining that the verification was insufficient to extend its plenary power; (2) erred by failing to file findings of fact and conclusions of law; (3) abused its discretion in dismissing the case for want of prosecution when the case was abated; (4) erred by refusing to reinstate the case; and (5) erred in concluding that Twist failed to timely prosecute his case. The Bank parties and Kittleman have responded to all these arguments, and the Bank parties have filed a motion to dismiss the appeal for lack of jurisdiction. Specifically, the Bank parties argue that the amended order of dismissal on October 19, 2006, was the final order in this case, and in the absence of a properly verified motion to reinstate, Twist's notice of appeal was due thirty days later, on November 20, 2006.[10] Twist's notice of appeal was not filed until December 7, 2006, and according to the Bank parties, it was therefore untimely and failed to invoke this Court's jurisdiction over the appeal.

Ordinarily, a notice of appeal must be filed thirty days after a final judgment is signed.[11] A verified motion to reinstate must be filed within 30 days after the order of

---

[10] *See* TEX. R. APP. P. 26.1.

[11] *See id.*

6

dismissal for want of prosecution.[12]  A proper motion to reinstate filed within 30 days after the dismissal extends the appellate timetables, making the notice of appeal due 90 days after the judgment was signed.[13]  If a motion to reinstate is not verified or supported by a sufficient substitute for the verification, it is ineffective to extend the trial court's plenary power or the appellate timetable.[14]  Thus, if Twist's motion to reinstate was not properly verified or supported by a sufficient substitute, we would lack jurisdiction over this appeal because Twist's notice of appeal was filed more than thirty days after the order dismissing the case.

The Bank parties argue that the verification was defective because it did not state that it was based on Leas's personal knowledge, and in fact, at the hearing on December 5, 2005, Leas admitted that he did not have personal knowledge of most of the facts in the motion to reinstate because he had not appeared in the case until September 19, 2006. We agree.

While rule 165a does not expressly require that the verification be based on personal knowledge, we note that in many other contexts, that requirement has been implied.  For example, in rule 93 of the Texas Rules of Civil Procedure, a defendant is required to verify certain defenses.[15]  Significantly, the rule provides that a few of those

---

[12] *See* TEX. R. CIV. P. 165a(3);  *McConnell v. May*, 800 S.W.2d 194, 194 (Tex. 1990) (per curiam).

[13] *See* TEX. R. APP. P. 26.1(a)(3).

[14] *See Butts v. Capitol City Nursing Home, Inc.*, 705 S.W.2d 696, 697 (Tex. 1986); *Silguero v. State,* Nos. 13-07-113-CV, 13-07-434-CV, 2009 WL 265071, at *3 (Tex. App.–Corpus Christi Jan. 30, 2009, orig. proceeding); *Owen v. Hodge*, 874 S.W.2d 301, 303 (Tex. App.–Houston [1st Dist.] 1994, no writ).

[15] *See* TEX. R. CIV. P. 93.

defenses may be verified on information and belief.[16] We have held that if the subsection of rule 93 does not specifically provide that the verification of a defense may be made on information and belief, then it must be verified based on personal knowledge.[17] The reasons for requiring verifications to be made on personal knowledge are sound:

> A compelling reason for the rule is so that the parties, the court, and its officers may be put on notice that the affiant knows whereof he speaks, and that he has personal knowledge of the matters to which he swears and is putting into issue. The parties, the court, and its officers need to know, and have a right to know, whether or not the affiant has personal knowledge of such matters. They should not be compelled to inquire by interrogatory or deposition as to whether or not the affiant has personal knowledge. Additionally, without such information present in the affidavit, the court and its officers will not know if the affiant is in compliance with what we believe to be the desire of the Texas Supreme Court that the affidavit be based on personal knowledge. Openness in the positions of the parties has been a continuing aim of the courts of this State since the Supreme Court enacted the Rules of Civil Procedure some fifty years ago, which rules, among other accomplishments, abolished the general demurrer. We feel it was in keeping with the Supreme Court's aim for openness between litigants concerning their positions to require the affidavit be based upon personal knowledge. Requiring a showing of personal knowledge normally takes little effort, results in no detriment to the affiant, and apprises the court and its officers of the source of the affiant's assertion.[18]

These reasons apply equally to a motion to reinstate, in which a party will likely be raising arguments based on facts that do not appear of record in order to explain the lack

---

[16] *See id.* at R. 93(7), (8), (13)(a), (13)(g), (15).

[17] *See Cantu v. Holiday Inns, Inc.*, 910 S.W.2d 113, 116 (Tex. App.–Corpus Christi 1995, writ denied) ("[W]e therefore agree with our sister court that Rule 93(13), which explicitly provides for verifications upon information and belief, logically indicates that the remainder of Rule 93 requires a verification based upon personal knowledge . . . ."); *see also Reyna v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 883 S.W.2d 368, 370-73 (Tex. App.–El Paso 1994) ("We believe the provisions of Rule 93 which allow affidavits based upon information and belief regarding certain specified matters effectively require personal knowledge for matters involving the remaining subsections of Rule 93."), *rev'd on other grounds*, 897 S.W.2d 777, 778-79 (Tex. 1995).

[18] *Reyna,* 883 S.W.2d at 372.

of activity in a case.[19]  Accordingly, although the rule does not specifically state that the verification must be based on personal knowledge, we believe that the purpose of the verification is not served if the verification is based on mere information and belief. Furthermore, the supreme court certainly could have included "information and belief" in the rule, as it has in other rules, had it so desired.  But it did not.

In *Guest v. Dixon*, the Texas Supreme Court considered the contours of the verification requirement, addressing similar, but distinguishable, arguments.[20]  In that case, Guest sued Dixon, and the trial court eventually dismissed the case for want of prosecution.[21]  Guest's attorneys filed a motion to reinstate the case and attached an affidavit from Guest's former counsel explaining the inactivity in the case, and the affidavit stated it was based on the former attorney's personal knowledge.[22]  Dixon argued that the verification was defective, and did not operate to extend the appellate timetables, because it was signed by Guest's former attorney and also because the former attorney's affidavit did not account for the two years of inactivity in the case that occurred after the attorney's representation terminated.[23]

The court of appeals held that the verification was insufficient because the rule

---

[19] *See* TEX. R. CIV. P. 165a(3) ("The court shall reinstate the case upon finding after a hearing that the failure of the party or his attorney was not intentional or the result of conscious indifference but was due to an accident or mistake or that the failure has been otherwise reasonably explained.").

[20] 195 S.W.3d 687, 688 (Tex. 2006) (per curiam).

[21] *Id.*

[22] *Id.*

[23] *Id.*

required the verification to be signed by Guest's attorney, not his former attorney.[24] Additionally, the court of appeals held that the verification was incomplete in that it did not account for the inactivity that occurred after the attorney ceased representing Guest.[25]

On appeal, the supreme court held that the verification requirement could be satisfied by the affidavit of a former attorney, even though the rule requires the motion to reinstate to be verified by the movant or his attorney.[26] The court noted that its recent cases have held that "procedural rules should be construed and applied so that the right of appeal is not unnecessarily lost to technicalities."[27] Furthermore, the court held that the affidavit was sufficient to invoke the court of appeals' jurisdiction even though it failed to explain two years of inactivity in the case.[28] The court held that "while the attorney's lack of knowledge may go to the merits of the reinstatement motion, it does not deprive the court of jurisdiction."[29]

We agree that the right of appeal should not be lost to a technicality.[30] However, we find *Guest* distinguishable because in that case, the attorney's affidavit did, in fact, state

---

[24] *See Guest v. Dixon*, 153 S.W.3d 466, 468 (Tex. App.–Amarillo 2004) ("Here, however, the affidavit of one of Guest's former attorneys does not amount to verification because the agency relationship had ceased to exist."), *rev'd*, 195 S.W.3d 687 (Tex. 2006).

[25] *Id.*

[26] *Guest,* 195 S.W.3d at 689.

[27] *Id.* at 688.

[28] *Id.* at 689.

[29] *Id.*

[30] *See id.* at 688.

that he had personal knowledge of the facts to which he testified.[31] The failure to verify a pleading based on personal knowledge, when that is required, is hardly a technicality. While the court in *Guest* rejected Dixon's argument that jurisdiction was lacking because the attorney lacked knowledge of and failed to explain two years of inactivity, that is not the same as the situation here, where the attorney's verification did not indicate that he had personal knowledge of *any* of the facts. We agree with the general proposition that a motion with a verification that only verifies part of the facts will suffice to extend the appellate timetables; however, a verification that does not indicate that the person signing the affidavit has personal knowledge of at least some of the facts is no verification at all. Leas's verification did not identify which facts he was verifying based on personal knowledge as opposed to his belief or information presented to him. Accordingly, we hold that the verification of a motion to reinstate must be based on personal knowledge, and Leas's verification was inadequate.[32]

As we recently held in *Silguero v. State*, however, "an unverified motion to reinstate must be supported by an affidavit *or other sufficient evidence* in the record in order to extend the trial court's plenary power or extend the time to file a notice of appeal."[33] "The affidavit or other evidence must serve as an adequate substitute for the verification

---

[31] *Id.*

[32] Twist relies on *3V, Inc. v. JTS Enterprises, Inc.*, 40 S.W.3d 533 (Tex. App.–Houston [14th Dist.] 2000, no pet.). In that case, the motion to reinstate was not verified, but the attorneys attached two affidavits to the motion. *Id.* at 538. These affidavits did not expressly state that they were based on the affiants' personal knowledge. *Id.* However, the court held that the facts recited in the verification made it clear that the verification was based on personal knowledge. *Id.* Leas's verification does not make any such showing. *See Cantu*, 910 S.W.2d at 116 ("A party's attorney may verify the pleading where he has knowledge of the facts, but does not have authority to verify based merely on his status as counsel."). Accordingly, *3V* is distinguishable.

[33] 2009 WL 265071, at *3 (emphasis added).

requirement established by the rules of civil procedure."[34]  Again, a substitute may be adequate if it is an acceptable method of proving the facts upon which the movant relies to reinstate the case.

Twist raises several arguments in this regard.  First, Twist argues that he attached numerous documents to his motion to reinstate.  He notes that the Bank parties and Kittleman did not object to these documents.  He argues that these documents contain several verifications by Twist himself, not Leas, purportedly establishing the facts upon which the motion to reinstate was based.  We have located only one verification in the record signed by Twist.  It is attached to a motion that was filed in the first lawsuit, and the allegations in the document that are verified do not include the abatement in the second lawsuit or explain the inactivity in the second lawsuit.  Accordingly, Twist's verification of that document does not serve as an adequate substitute for Leas's defective verification.[35]

Second, Twist argues that Leas testified at the hearing on December 5, 2006, and stated that he had personal knowledge of the facts supporting the reinstatement motion.  The problem with this argument is that, by the time the hearing was conducted, the trial court had already lost plenary power because the motion to reinstate was not properly verified.  Thus, Leas's testimony at the hearing was not timely and was not properly before the trial court.[36]  Accordingly, there is no substitute for the defective verification in the record, and the motion to reinstate did not extend the appellate timetables.

---

[34] *Id.*

[35] *See id.*

[36] *Cf. In re Dobbins*, 247 S.W.3d 394, 396-97 (Tex. App.–Dallas 2008, orig. proceeding) (holding that evidence presented at hearing conducted within thirty days after date of dismissal was a sufficient substitute for the verification requirement).

Twist also appears to argue that the lack of personal knowledge is a "form" defect that must be raised in writing, and he should have had an opportunity to cure the defect. Twist argues that the defective verification was not pointed out until a few minutes before the December 5, 2006 hearing. However, because a proper verification was required to extend the appellate timetable, which affects this Court's jurisdiction, the defect cannot be waived by failing to raise it in the trial court. We have a duty to raise the issue on our own, even in the absence of an objection by the opposing party.[37]

Alternatively, Twist argues that he filed other motions that extended the appellate timetables. He argues that he filed a motion to modify the judgment and a request for findings of fact and conclusions of law, which he argues extended the appellate timetables.[38] Twist cites to his November 16, 2006 motion to reinstate, in which he complains that the October 19, 2006 order purports to lift the stay and includes findings that should not be included in a judgment. Nowhere, however, does Twist ask the trial court to modify the judgment to delete those provisions as an alternative remedy. Rather, his prayer for relief merely asked the trial court to reinstate the case on its docket. Twist cannot escape the verification requirement by attempting to recast his motion to reinstate as a motion to modify the judgment.[39]

Furthermore, a request for findings of fact and conclusions of law must be filed

---

[37] *See Guest*, 153 S.W.3d at 467, *rev'd on other grounds,* 195 S.W.3d 687 (Tex. 2006).

[38] *See* TEX. R. APP. P. 26.1(a)(2), (4).

[39] *City of McAllen v. Ramirez,* 875 S.W.2d 702, 704-05 (Tex. App.–Corpus Christi 1994, orig. proceeding) ("To allow a plaintiff to circumvent the verification requirements of Rule 165a(3) by merely changing the caption of his motion would be contrary to the purpose of the rule, as well as inconsistent with the general principle that motions are judged by their substance rather than their titles.").

twenty days after the judgment is signed.[40]  The judgment was signed on October 19, 2006, and therefore, any request for findings of fact and conclusions of law was due on November 8, 2006.  Twist, however, did not file his request until December 7, 2006, after the trial court denied his motion to reinstate.  Twist apparently believes that a request for findings of fact can be filed after an order denying a motion to reinstate.  But such an order is not a "judgment."[41]  Thus, Twist's request for findings of fact and conclusions of law was late, and it was ineffective to extend the appellate timetables.  More importantly, however, this Court has held that a verified motion to reinstate is the exclusive method for extending the trial court's plenary power to review a prior order dismissing a case for want of prosecution.[42]

### III.  Conclusion

For all the foregoing reasons, we grant the Bank parties' motion to dismiss and dismiss this appeal in its entirety for lack of jurisdiction.  In Twist's response to the motion to dismiss, Twist asks this Court to sanction the Bank parties and Kittleman for various alleged misrepresentations.  We find no merit to those arguments.  Accordingly, we also deny Twist's request for sanctions.

LINDA REYNA YAÑEZ,
Justice

Opinion delivered and filed this
the 30th day of June, 2009.

---

[40] TEX. R. CIV. P. 296.

[41] *See Burns v. Drew Woods, Inc.,* 900 S.W.2d 128, 129 (Tex. App.–Waco 1995, writ denied).

[42] *Ramirez*, 875 S.W.2d at 705.

14